HONORABLE TANA LIN

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

PAUL BERNAL and JACK COE,
individuals,

                Plaintiffs,

    v.

THE BOEING COMPANY,

                Defendant.

No. 2:22-cv-00533-TL

**DEFENDANT THE BOEING COMPANY'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)**

**NOTE FOR MOTION CALENDAR: Friday, July 15, 2022**

## I.   INTRODUCTION

Plaintiff Paul Bernal's First Amended Complaint for Damages ("First Amended Complaint") does not remedy the defect in his original Complaint for Damages ("Original Complaint"), in which he admitted he received notice of his demotion, the basis for his sole claim of employment retaliation, more than three years before he filed this lawsuit. In both his Original Complaint and First Amended Complaint, Bernal supports his retaliation claim with allegations dating between 2014 and 2018, which surely fall outside the limitations period. Even where Bernal raises allegations about discrete events occurring in 2019, he explicitly alleges the purported retaliation culminated on April 8, 2019 when Boeing informed him of a job demotion. Yet, Bernal did not file his Complaint for Damages until April 15, 2022 — <u>three years and seven</u>

MOTION TO DISMISS
(No 2:22-cv-533) –1

92452982.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

<u>days</u> after the April 8, 2019 notification of the demotion. His retaliation claim, therefore, is barred by the three-year statute of limitations for the Washington Law Against Discrimination ("WLAD") claims.

Faced with his own damaging admission about the April 8, 2019 notice, which Bernal retains in the First Amended Complaint, Bernal tries two new tactics: (1) he alleges Boeing's job demotion notice was contingent; and (2) he adds a new theory of relief for retaliatory hostile work environment. Both efforts fail. First, Boeing's April 10, 2019 letter is plain on its face that Bernal must either accept the demotion, or his employment would be terminated. The letter is an unambiguous notice of an adverse employment action. Second, Bernal's hostile work environment theory is also untimely because the supposed acts of harassment that occurred within the limitations period are minor, insubstantial, and not actionable as a matter of law. For example, he alleges that a hostile work environment existed beyond April 15, 2019 because his manager was late for—and distracted during—video calls and provided him ice cream tokens in recognition of a successful project instead of a more substantial form of recognition. Bernal fails to state a claim upon which relief may be granted because his sole claim in this action of retaliation under the WLAD is untimely, and the Court should dismiss this action as to Bernal.

## II.      BACKGROUND

### A.      Bernal's Allegations

Bernal is a current Boeing employee who has worked for the Company in a variety of capacities since 1989. Dkt. No. 15 at ¶¶ 1, 2, 24, 31, 48. In his First Amended Complaint, Bernal alleges Boeing retaliated against him after he purportedly spoke out about age discrimination in July 2018. *Id.* at ¶¶ 29, 72, 98-100. After he allegedly spoke out, Bernal alleges in 2018: (1) Boeing removed him from leading an intellectual property "enforcement team" in August 2018; and (2) in a December 2018 performance review, Boeing rated Bernal's performance lower than it did in previous years. *Id.* at ¶¶ 29, 39. Bernal also attempts to support his retaliation claim with 2019 events by alleging: (1) he was passed over for other management positions in January

MOTION TO DISMISS
(No. 2:22-cv-533) –2

92452982.1

2019; (2) the size of his team was reduced in the winter of 2019, and (3) ultimately, he was notified of a reassignment/demotion out of a management role on April 8, 2019. *Id.* at ¶¶ 41, 48. Specifically, Bernal alleges:

> On April 8, 2019, Svoboda informed Bernal that on April 19th he would not only be drastically demoted to an IP Licensing Specialist position, but that he would be directly reporting to none other than Beltz. Svoboda also told Bernal that he had 10 days to accept the transfer or he would be terminated;

*Id.* at ¶ 48. Bernal did not reject the reassignment and remains a Boeing employee. *See id.* at ¶¶ 48, 57. Boeing also provided Bernal an April 10, 2019 letter in which it informed Bernal that it reached a final decision that he was being reassigned (demoted) to a new position:

> We are pleased to extend to you an equivalent redeployment reassignment notification for a non-union position of IP Licensing Specialist….Your supervisor will be Linda A. Beltz….If you choose to reject this position that is deemed equivalent to your current assignment, the result is resignation from The Boeing Company….Effective Date of Assignment: April 19, 2019.

Declaration of Loni Englund in Support of Motion to Dismiss ("Englund Decl.") at Ex. A. Bernal admits he received this letter in his First Amended Complaint. Dkt. No. 15 at ¶¶ 49-53.

Bernal's First Amended Complaint also includes previously unasserted allegations about post-April 15, 2019 events which Bernal uses to plead a new theory that Boeing retaliated against him not just with the demotion, but with a hostile work environment. These allegations include Bernal's complaint that Boeing engaged in a hostile work environment after April 15, 2019 when it provided him ice cream tokens in recognition of a successful project, applied its standard remote work policy to his new position, cited his failure to meet a deadline in a performance review (erroneously, in his view), and questioned whether his internal volunteer work interfered with his new position. *Id.* at ¶¶ 59, 61-70. Bernal also alleges his manager created a hostile work environment when she was late for, and seemed distracted during, video conferences with him. *Id.* at ¶ 71.

MOTION TO DISMISS
(No. 2:22-cv-533) –3

92452982.1

**B.      Procedural History**

Plaintiffs Paul Bernal and Jack Coe ("Plaintiffs") commenced this action on April 15, 2022 by filing their Complaint for Damages in King County Superior Court. Dkt. No. 1 at ¶ 2. Plaintiffs served Boeing with the Summons and Complaint on April 20, 2022. *Id*. On April 21, 2022, Boeing removed Plaintiffs' Complaint to this Court. *Id.* In addition to Bernal's allegation that he was retaliated against by Boeing in violation of the WLAD, the Complaint also contains allegations by Coe that he was discriminated against on the basis of age and retaliated against by Boeing in violation of the WLAD. *See generally* Dkt. No. 1-1. This motion is addressed only to Bernal's sole cause of action for retaliation and does not seek dismissal of Coe's claims.

On May 10, 2022, Boeing filed a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) ("First Motion to Dismiss"). Dkt. No. 13. In the First Motion to Dismiss, Boeing argued Bernal's claim was time-barred because Bernal's allegations, on their face, demonstrated his claim accrued three years and seven days before he filed the lawsuit. Dkt. Not. 13; Original Complaint at ¶ 44. In response to Boeing's First Motion to Dismiss, Plaintiffs filed a First Amended Complaint for Damages. *See generally* Dkt. No. 15. Thereafter, Boeing withdrew its motion because it was filed in response to the Original Complaint, which was no longer operative and had been superseded by the First Amended Complaint. Dkt. No. 16. Boeing now files this renewed Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) in response to the operative complaint in this action, the First Amended Complaint.

## III.      ARGUMENT

**A.      Standard**

"A complaint cannot survive a motion to dismiss" under Rule 12(b)(6) "unless it alleges facts that plausibly (not merely conceivably) entitle plaintiff to relief." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067-68 (9th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A court properly dismisses a claim where the face of the complaint shows an untimely claim. *See Jones v. Block,* 549 U.S. 199, 215 (2007) ("If the allegations…show that relief is barred by the

MOTION TO DISMISS
(No. 2:22-cv-533) –4

92452982.1

applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."). The Court usually considers only the pleadings in deciding a 12(b)(6) motion. It is, however, well-established that "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

**B.      Bernal's Claim is Barred by the Three-Year Statute of Limitations**

The WLAD, Wash. Rev. Code § 49.60 *et. seq.*, does not have its own limitations period. *Antonius v. King* Cty.*,* 153 Wash. 2d 256, 261-62, 103 P.3d 729, 732 (2004). Therefore, WLAD claims must be brought within three years under the general three-year statute of limitations for personal injury actions. *Id.* (citing Wash. Rev. Code § 4.16.080(2)). "The limitations periods, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past." *Delaware State College v. Ricks,* 449 U.S. 250, 256 (1980) (citation omitted).

**1.      Bernal's Retaliation Claim Based on His Demotion and Earlier Alleged Adverse Employment Actions is Barred by the Three-Year Statute of Limitations**

To prove unlawful retaliation under the WLAD, a plaintiff-employee must allege an adverse employment action occurring within the limitations period. *Crownover v. State ex rel. Dep't of Transp.,* 165 Wash. App. 131, 142, 265 P.3d 971, 977 (Div. 3 2011) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–16 (2002)).

Under both state and federal law, the statute of limitations commences on the date an adverse employment action is *final* and *communicated* to the employee. *Ricks,* 449 U.S. at 258; *see also Albright v. State, Dep't of Soc. & Health Servs. Div. of* Developmental *Disabilities,*

65 Wash. App. 763, 767, 829 P.2d 1114, 1116 (Div. 1 1992) (adopting *Ricks* for WLAD claims). *Ricks* and *Albright* apply equally to discrimination and retaliation claims. *See McDermott v. Brennan*, NO. C19-0714-JCC, 2020 WL 1847781, *2 (W.D. Wash. Apr. 13, 2020) (applying *Ricks* to retaliation claim).

For example, in *Ricks*, a former employee argued the statute of limitations on his claim commenced when his employment ceased in June 1975, rather than at the time the defendant college *informed him* of its decision denying him tenure in June 1974. *Ricks,* 449 U.S. at 257–58. The Supreme Court rejected the employee's position, holding that the limitations period commenced at the time the tenure decision was made and communicated:

> In sum, the only alleged discrimination occurred-and the filing limitations periods therefore commenced-at the time the tenure decision was made and communicated to [plaintiff]. That is so even though one of the *effects* of the denial of tenure-the eventual loss of a teaching position-did not occur until later. The Court of Appeals for the Ninth Circuit correctly held, in a similar tenure case, that "[t]he proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful."

*Id.* at 258 (emphases in original); *see also Abramson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979) ("The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful."); *Albright,* 65 Wash. App. at 767, 829 P.2d at 1116 (finding that statute of limitations commenced on the date an accommodation request was "officially denied and communicated").

Here, Bernal filed his Original Complaint on April 15, 2022, and therefore, he must base his claim on adverse employment actions occurring on or after April 15, 2019. Bernal, however, only alleges discrete events occurring before April 15, 2019: (1) Boeing removed him from an intellectual property "enforcement team" in August 2018; (2) several employees were reassigned from his team to other parts of the organization from August 2018 to January 2019; (3) his December 2018 performance ratings were lower than in previous years; (4) he was passed over for other management positions in January 2019; and (5) he was notified of a

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1   reassignment/demotion on April 8, 2019. First Amended Complaint at ¶¶ 29, 33, 38, 39, 41, 43,

2   48.

3          In his Original Complaint, Bernal freely admitted Boeing informed him on April 8, 2019

4   of a final demotion decision. Original Complaint at ¶ 44. And Bernal's original allegations

5   described no conditional or equivocal communications from Boeing. *See generally id.* In fact,

6   Bernal's original allegations described a <u>final</u> decision:

7                    On April 8, 2019, Svoboda informed Bernal that on April 19th he
                     would not only be drastically demoted to an IP Licensing Specialist
8                    position, but that he would be directly reporting to none other than
                     Beltz. Svoboda also told Bernal that he had 10 days to accept the
9                    transfer or he would be terminated.

10  *Id.* at ¶ 44. Bernal's original claim was plainly time-barred, and Boeing moved to dismiss the

11  untimely claim in its First Motion to Dismiss. Dkt. No. 13.

12         Apparently recognizing that, under *Ricks* and *Albright,* Boeing's April 8, 2019

13  notification commenced the statute of limitations as a final and communicated notice, Bernal

14  attempts to characterize an April 10, 2019 letter from Boeing as being conditional or tentative.

15  Dkt. No. 15. But Boeing's April 10, 2019 letter is not contingent, and in fact, is completely

16  consistent with Bernal's own allegations about the April 8, 2019 notice:

17

18

| Bernal's April 8, 2019 Allegations | Boeing's April 10, 2019 Letter |
|---|---|
| On April 8, 2019, Svoboda informed Bernal that on April 19th he would not only be drastically demoted to an IP Licensing Specialist position, but that he would be directly reporting to none other than Beltz. Svoboda also told Bernal that he had 10 days to accept the transfer or he would be terminated. | April 10, 2019<br>…<br>We are pleased to extend to you an equivalent redeployment reassignment notification for a non-union position of IP Licensing Specialist…Your supervisor will be Linda A. Beltz….If you choose to reject this position that is deemed equivalent to your current assignment, the result is resignation from The Boeing Company…Effective Date of Assignment: April 19, 2019 |

19

20

21

22

23

24

25

26

MOTION TO DISMISS
(No. 2:22-cv-533) – 7

92452982.1

*Compare* First Amended Complaint, ¶ 48 *with* Englund Decl. at Ex. A.

The April 10, 2019 letter contains boilerplate language notifying Bernal that he must be eligible for reassignment (demotion) under Boeing's "Applicant Eligibility and Release Requirements" policy. Englund Decl. at Ex. A. The boilerplate language *also states* that if Bernal's current manager approves the reassignment, then the "Applicant Eligibility and Release Requirements" policy is waived for purposes of Bernal's transfer. *Id.*

Bernal fails to allege facts demonstrating that the April 10, 2019 letter is tentative. Importantly, Bernal does not allege that he was not eligible for reassignment under the "Applicant Eligibility and Release Requirements" policy. Moreover, Bernal readily admits his manager, Svoboda, approved and initiated the reassignment, thereby waiving any eligibility issues. First Amended Complaint at ¶¶ 48, 55-56. Bernal raises no plausible allegations to support a theory that Svoboda would initiate an allegedly "humiliating" demotion while simultaneously standing in the way of the demotion by enforcing the eligibility requirements that he had complete authority to waive. Obviously, Svoboda was not going to stand in the way of the very demotion he allegedly was causing, and the boilerplate eligibility language did not create a real contingency.

Bernal also speculates about the consequences of the demotion notice (such as who he would report to, if the term "surplus" would impact his future role, moving from an office to a cubicle), *Ricks* focuses *only on the notice itself*, not the downstream consequences. Thus, Bernal's new speculative allegations are irrelevant under *Ricks* and *Albright.* First Amended Complaint at ¶¶ 49-52. It remains undisputed that Boeing notified Bernal of its final decision to demote him on April 8, 2019 and April 10, 2019. First Amended Complaint at ¶ 48-49; Englund Decl. at Ex. A. Consistent with *Ricks* and *Albright,* the Court should dismiss Bernal's claim that accrued before April 15, 2022.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**2.     Bernal's Retaliatory Hostile Work Environment Theory Is Also Untimely Because No Acts of Harassment Occurred within the Limitations Period as a Matter of Law**

In addition to alleging the discrete acts of removing Bernal from the enforcement team, reducing the size of Bernal's team, giving him a lower performance evaluation, passing him over in filling other management jobs, and demoting him from a management role, Bernal also (now) pleads a hostile work environment theory based on a series of alleged occurrences that occurred before and after his demotion.   Washington has adopted the U.S. Supreme Court's rule in *National R. R. Passenger Corp. v. Morgan*, 576 U.S. 101, 107 (2002), to determine the timeliness of hostile work environment claims under the WLAD.  *See Antonius*, 153 Wn.2d at 270. Under *Morgan* and *Antonius*, a hostile work environment claim is timely if one of the acts of harassment constituting the hostile work environment occurred within the limitations period. *Id.*

Here, even assuming the truth of all the allegations in the First Amended Complaint, there are manifestly no acts of harassment that occurred within the limitations period.  To determine whether a work environment is sufficiently hostile to violate the WLAD, Washington courts look "at all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787-88 (1998); *MacDonald v. Korum Ford,* 80 Wash. App. 877, 885, 912 P.2d 1052, 1058 (Div. 2 1996) (employing federal "totality of the circumstances" analysis in determining whether a hostile environment existed in violation of the WLAD).

Mere offensive behavior, without more, is insufficient to support a hostile work environment claim. *Clarke v. State Att'y Gen.'s Off.,* 133 Wash. App. 767, 784, 138 P.3d 144, 153 (Div. 2 2006) (citing *Adams v. Able Bldg. Supply, Inc.,* 114 Wash. App. 291, 296, 57 P.3d 280 (Div. 3 2002)). Casual, isolated or trivial instances of a discriminatory environment do not affect the terms or conditions of employment to a sufficiently significant degree to violate the

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1   law. *Glasgow v. Georgia-Pac. Corp.,* 103 Wash. 2d 401, 406, 693 P.2d 708, 712 (1985).

2   Although a single incident may suffice to constitute a hostile work environment, the incident

3   must be "extremely severe." *Brooks v. City of San Mateo,* 229 F.3d 917, 926 (9th Cir. 2000).

4   Mere "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will

5   not amount to discriminatory changes in the terms and conditions of employment." *Faragher,*

6   524 U.S. at 788.

7   　　　In this case, Bernal has not pled sufficient facts that occurred within the limitations

8   period, as a matter of law, to make his hostile work environment theory timely. Indeed, Bernal

9   alleges nothing offensive, nothing severe, no teasing, no offhand comments, and nothing

10  physically threatening. *See generally* First Amended Complaint. Bernal even admits he "excelled

11  at his work" after the job demotion, confirming there was no hostile work environment that

12  "unreasonably interfere[d] with [his] performance." *Id.* at ¶ 66; *Faragher,* 524 U.S. at 787-88.

13  　　　Instead, Bernal's allegations within the limitations period concern infrequent workplace

14  slights and workplace *decisions* he disagrees with, but nothing, whether viewed individually or

15  collectively, severe or pervasive enough to affect the terms and conditions of his employment.

16  After April 15, 2019, Bernal alleges Boeing created a hostile work environment when it did not

17  let him work from home (pre-pandemic) because of its remote work policy, limited (but did not

18  eliminate) his participation in certain extracurricular groups or committees within Boeing he

19  acknowledges were "volunteer work," asked him to give his manager access to his business

20  calendar, provided him ice cream tokens to recognize a successful work project instead of a more

21  substantial form of recognition, and cited his failure to meet a deadline (which he disagrees

22  occurred) in a performance review. First Amended Complaint at ¶¶ 59, 61-70. As a matter of

23  law, none of these routine and ordinary occurrences amount to acts of harassment.

24  　　　Bernal acknowledges that once the pandemic started and he and his manager were

25  working from home, he had no contact with her except video conferences, but he argues his

26  manager created a hostile work environment when she was at times late for, or seemed distracted

MOTION TO DISMISS
(No. 2:22-cv-533) –10

92452982.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

during, video conferences with him. *Id.* at ¶ 71. Again, as a matter of law, these trivial workplace annoyances related to Zoom etiquette do not amount to harassing acts.

In determining the timeliness of a hostile work environment claim under the WLAD, the court must focus on the acts that occurred within the limitations period. *Crownover v. State ex rel. Dept. of Transp.*, 165 Wash. App. 131, 144, 265 P.3d 971, 978 (Div. 3 2011). When the only acts that are alleged to have occurred within the limitations period are innocuous, the hostile work environment claim is not timely. *Id.* at 144-45, 265 P.3d at 978. Here, Bernal's retaliatory hostile work environment theory cannot save his untimely cause of action for retaliation, because, even as pleaded by Bernal, the acts occurring within the limitations period are minor and trivial and do not constitute acts of harassment.

**C.     It Is Appropriate to Dismiss Bernal's Claim with Prejudice**

A claim should be dismissed with prejudice when repleading would be futile. *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017). Where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court need not give an opportunity to amend. *See Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

Here, Boeing relies on Bernal's own allegations to support its motion to dismiss. It is futile, therefore, for Bernal to amend because he has now had two opportunities to allege everything necessary for the Court to reach a decision on the statute of limitations. No additional facts would change Bernal's allegations that "[o]n April 8, 2019, [Boeing] informed Bernal that on April 19th he would not only be drastically demoted to an IP Licensing Specialist position…." Repleading is futile, and the Court may appropriately dismiss Bernal's claims with prejudice.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## IV.    CONCLUSION

For the reasons set forth above, the Court should dismiss Bernal's sole claim of unlawful

employment retaliation under Wash. Rev. Code § 49.60 as untimely.

DATED: June 14, 2022

*s/ Paul E. Smith*
Paul E. Smith, WSBA No. 21158

*s/ Kyle D. Nelson*
Kyle D. Nelson, WSBA No. 49981
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
Email: PSmith@perkinscoie.com
        KyleNelson@perkinscoie.com
Attorneys for Defendant
The Boeing Company

MOTION TO DISMISS
(No. 2:22-cv-533) – 12

92452982.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# CERTIFICATE OF CONFERRAL

Pursuant to the Cout's Standing Order for All Civil Cases, I certify that I made a good faith effort to, and in fact did, meet and confer with plaintiffs' counsel, Margaret Boyle, prior to filing this Motion to Dismiss. I conferred with plaintiffs' counsel regarding Boeing's proposed Motion to Dismiss in a telephone conversation on May 6, 2022. I also discussed with plaintiffs' counsel the then-pending First Motion to Dismiss, plaintiffs' plans to file an Amended Complaint, and Boeing's likely response of a revised Motion to Dismiss, at the Rule 26(f) conference conducted by telephone on May 24, 2022. I also conferred with Bernal's counsel regarding the Motion to Dismiss by email on May 5 and 6, 2022, and June 1, 2, and 3, 2022.

DATED: June 14, 2022

*s/ Paul E. Smith*
Paul E. Smith, WSBA No. 21158

MOTION TO DISMISS
(No. 2:22-cv-533) –13

92452982.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1

## CERTIFICATE OF SERVICE

2       On June 14, 2022, I caused to be served upon counsel of record, at the address stated

3 below, via the method of service indicated, a true and correct copy of the foregoing document.

4
| Margaret M. Boyle, WSBA #17089 | ____ | Via Hand Delivery |

5
Boyle Martin Thoeny, PLLC          ____   Via U.S. Mail, 1st Class, Postage
100 West Harrison Street, Ste. S300        Prepaid

6
Seattle, WA 98119                  ____   Via Overnight Courier
Tel: 206-217-9400                  ____   Via Facsimile

7
Fax: 206-217-9600                   X     Via CM ECF E-Filing
Email: margaret@bmtlitigation.com  ____   Via Email

8

9 Attorney for Plaintiffs

10       **I certify under penalty of perjury under the laws of the State of**
**Washington that the foregoing is true and correct.**

11       EXECUTED at Seattle, Washington, on June 14, 2022.

12

13       Rebecca Becken, Legal Practice Assistant

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTION TO DISMISS
(No. 2:22-cv-533) – 14

92452982.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000