THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PAUL BERNAL and JACK COE, individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>THE BOEING COMPANY,<br><br>Defendant. | Case No. 2:22-cv-00533-TL<br><br>**DEFENDANT BOEING'S MOTION FOR SUMMARY JUDGMENT**<br><br>Noted for Consideration: March 17, 2023 |

## I.  INTRODUCTION

In June 2018, when Plaintiff Bernal was Senior Manager of a *licensing* team in Boeing's Intellectual Property group, his manager, Rick Svoboda, invited him to accept a job as manager of an intellectual property *enforcement* team. Bernal responded by stating he was not interested in an enforcement job and lacked the skills to do it well. Bernal soon also told his subordinates he was not interested in the job. Svoboda told Bernal he wanted someone who would be "passionate" about the enforcement job. Since Bernal admitted he was not that candidate, Svoboda looked elsewhere. While he did so, Bernal preliminarily assisted with enforcement responsibilities until Svoboda found a candidate who truly wanted the job.

In August 2018, Svoboda told Bernal he had found that candidate. On that same day in August 2018, Svoboda also told Bernal he had 90 days to find another manager job outside of the Intellectual Property group, or he would be reassigned to a non-manager position. Bernal did not

BOEING'S MOTION FOR SUMMARY
JUDGMENT - 1
Case No. 2:22-cv-00533-TL

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

find a job within that 90-day window, so Svoboda gave him more time.

Bernal did not find such a job by year-end 2018, so Svoboda gave him even more time to do so. But when Bernal still had not found such job a few months later, in early April 2019, Svoboda informed Bernal in person— *consistent with his statement to Bernal in August 2018*— that he was being reassigned to an individual contributor position on another Boeing intellectual property team. Additionally, on April 10, 2019, Human Resources delivered a letter to Bernal confirming he was being reassigned. This April 10, 2019 written notice of reassignment explained that Bernal would retain the same job level and the same annual salary rate of almost $200,000. Perhaps this is why Bernal sat on his rights *for more than three years* until he eventually filed this lawsuit on April 15, 2022 in which his only claim is that Boeing treated him less favorably because he repeated claims he had heard from others that they (not he) were being treated less favorably because of their age. *At his deposition, Bernal admitted each of these acts occurred more than three years before he filed his Complaint*. In so doing, Bernal effectively admitted his claims are time-barred under the applicable 3-year statute of limitations.

Bernal's Amended Complaint alleges only minor indignities within the limitations period. *(Dkt. No. 15)*. For example, Bernal claims he did not like the cubicle to which he was assigned in spring 2019, and he did not like his new manager or the way she managed him between April 19, 2019 and June 2021, but such events do not give rise to a right to relief.

Bernal's primary grievances, and the only potential sources of his alleged economic damages, are that (1) in early April 2019 he was reassigned to a non-manager role; (2) in July/August 2018 he was not placed in an enforcement manager job he had previously and publicly denigrated; and (3) in December 2018 he received a purportedly poor job review. *Again, Bernal admits that all of these events occurred or were initiated in 2018*. Because Bernal has not identified any purported actions within the limitations period that would give rise to a right to relief, Boeing asks the Court to enter summary judgment in its favor.[1]

---

[1] Boeing is not seeking relief in connection with Plaintiff Coe's claims, as the parties have resolved their differences

BOEING'S MOTION FOR SUMMARY JUDGMENT - 2
Case No. 2:22-cv-00533-TL

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

## II. FACTUAL BACKGROUND

On August 2, 2018 at around 5:00 p.m., then Intellectual Property Licensing and Protection Director Rick Svoboda called Bernal to tell him that, because of Senior Leadership's desire to refocus Intellectual Property group resources, Bernal's team of four (Global Patent and Technology ("GP&T")) needed to be re-sized and/or reassigned, and Bernal had 90 days to find another manager role outside of Svoboda's intellectual property group or else he would be demoted out of management. *Bannon Declaration, Ex. B (Deposition of Paul Bernal at 79-80); Declaration of Rick Svoboda at ¶ 8; Declaration of Peter Hoffman at ¶ 4.* Long before Svoboda delivered this message to Bernal in August 2018, Bernal's GP&T team had already been substantially reduced in size because of changing priorities in Boeing's intellectual property group, and Bernal knew about those changing priorities as early as 2016. *Bannon Decl., Ex. B (Bernal Dep. at 59:6-62:11).* In fact, Bernal knew at the time he accepted his management position back in 2013 that he was managing a project-assignment that was risky and might not succeed. *Id.*; *Svoboda Decl. at ¶ 3-6.*

When Svoboda told Bernal on August 2, 2018 that he needed to find a new manager job outside the intellectual property group or be demoted to a non-management position, Svoboda initially provided Bernal with 90 days to find that job. *Bannon Decl., Ex. B (Bernal Dep. at 79:7-80:9, 82:10-14, 84:1-18); Svoboda Decl. at ¶ 9.* Svoboda later extended that deadline until the end of 2018. *Id*.

In the very same August 2, 2018 conversation in which Svoboda told Bernal he had 90 days to find another management job or be demoted, Svoboda also told Bernal that Angela Smith had been selected to lead the intellectual property *enforcement* group. *Bernal Dep. at 80*. This followed an earlier discussion in June 2018 in which Svoboda had invited Bernal to become the manager of that enforcement team. *Bannon Decl., Ex. B (Bernal Dep. at 67:15-70:24); Svoboda Decl. at ¶ 7.* In response, Bernal told Svoboda in June 2018 that, "I'm not really excited about it. It's not my area of expertise. I would prefer to continue leading GP&T." *Id., (Bernal Dep. at 68:3-*

---

and will soon file a Stipulated Notice of Dismissal of Mr. Coe's claims.

BOEING'S MOTION FOR SUMMARY JUDGMENT - 3
Case No. 2:22-cv-00533-TL

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

7); *Svoboda Decl. at ¶ 7*. When Svoboda told Bernal he really wanted him to take the job at the "end of June," Bernal again responded, "not that interested. Not my desires, passions." *Bannon Decl., Ex. B (Bernal Dep. at 68:3-7)*; Bernal also told all of his direct reports he "really did not want the enforcement position." *Id., (Bernal Dep. at 82-83)*.

Later, sometime in July 2018, Bernal reconsidered the situation and told Svoboda he would take the enforcement position. *Id., (Bernal Dep. at 68:3-70:24)*. But, as Bernal knew, Svoboda wanted someone who was truly "passionate" and "excited" about the enforcement management role, and Bernal clearly was not that person. *Id., (Bernal Dep. at 70:2-5); Svoboda Decl. at ¶ 7*. Thus, while Bernal assisted with some preliminary enforcement agenda items, Svoboda looked for and found a candidate—Angela Smith—who was excited about leading that team. *Svoboda Decl. at ¶ 7*. He therefore told Bernal on August 2, 2018 that Smith was to lead the enforcement team, and that Bernal had 90 days to find another job or Svoboda would demote him out of management. *Bannon Decl., Ex. B (Bernal Dep. at 79:7-80:9); Svoboda Decl. at ¶ 8*.

In December 2018, Bernal received his annual performance review from Svoboda, with which he disagreed "on scores." *Bannon Decl., Ex. B (Bernal Dep. at 86:18-88:13)*. In fact, Bernal had also disagreed with performance reviews that Svoboda had given him in 2015, 2016 and 2017. *Id., (Bernal Dep. at 88:18-89:19); Svoboda Decl. at ¶ 6; Ex. B to Svoboda Decl.* But in December 2018, Bernal decided his 2018 performance review was unfairly low because Svoboda was retaliating against him for having told him that another manager, Linda Beltz, was treating other employees less favorably because of their age. *Bannon Decl., Ex. B (Bernal Dep. at 90:3-93:7)*. Bernal did not have any personal knowledge of any such purported age discrimination, but he had heard such allegations from other people, allegations that he characterized as "water cooler talk." *Id., (Bernal Dep. at 93:4-7)*. In any event, Bernal testified that he believed in December 2018 that his performance review was the result of unlawful retaliation by Svoboda. *Id., (Bernal Dep. at 90:3-93:7)*.

When Bernal still had not found a new management position at the end of December 2018,

BOEING'S MOTION FOR SUMMARY JUDGMENT - 4
Case No. 2:22-cv-00533-TL

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

Svoboda again gave Bernal more time to find a vacant management position to fill. *Bannon Decl. Ex. B (Bernal Dep. at 84-86); Svoboda Decl. at ¶ 19.* Finally, when Bernal still had not found such a job by early March, Svoboda—who was preparing to retire from his Boeing career—notified Boeing Human Resources on March 20, 2019 of his decision to reassign Bernal. *Svoboda Decl. at ¶ 11; Ex. D to Svoboda Decl.* According to Bernal, he and Svoboda then met on April 8, 2019 and Svoboda gave him verbal notice that his reassignment could wait no longer, and would take place on April 19. *Bannon Decl., Ex. A (Amended Complaint at ¶ 48) and Ex. B (Bernal Dep. at 120:18 – 121:23); Svoboda Decl. at ¶ 12, Ex. E to Svoboda Decl.* As explained in the April 10, 2019 written notice, Boeing told Bernal on April 10, 2019 that he was being reassigned to an individual contributor role but would retain the same job level and the same base salary of almost $200,000. *Svoboda Decl. at ¶ 12; Ex. E to Svoboda Decl.; Bannon Decl., Exs. C & D (April 10, 2019 reassignment letter).*[2]

In summary, the following facts are undisputed:

- **August 2018**: Svoboda told Bernal he had hired Angela Smith to fill the Intellectual Property enforcement manager job.

- **August 2018**: Svoboda told Bernal he would be removed from his management role if he did not find another manager job outside of the Intellectual Property group within 90 days.

- **December 2018**: Bernal received an annual performance review which he considered retaliatory for reporting of "water cooler" talk that manager Linda Beltz was engaged in age discrimination against other employees.

- **March 2019**: Bernal did not find another management job despite having been given more than six months to do so. Svoboda notified Boeing Human Resources, in writing on March 20, 2019, that it was time to remove Bernal from his management position and place him in an individual contributor position.

- **April 8, 2019**: Svoboda told Bernal that he was being removed from his management position.

//

---

[2] Director Svoboda was wrapping up operational issues before he retired in May 2019.

BOEING'S MOTION FOR SUMMARY JUDGMENT - 5
Case No. 2:22-cv-00533-TL

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

- **April 10, 2019**: Boeing Human Resources provided Bernal with the reassignment letter.

- **April 15, 2022:** Bernal filed this lawsuit in King County Superior Court.

Each of these allegedly retaliatory events took place *more than three years* before Bernal filed his lawsuit on April 15, 2022. *(Dkt. No. 1-1)*. Boeing denies that any of these acts were unlawfully retaliatory or otherwise improper but, even if they were, Bernal's request for relief in connection with any such act is time-barred. As explained further below, Bernal's only remaining claims—claims for which he seeks only non-economic damages—involve minor purported indignities that do not give rise to a right to relief.

### III.  ARGUMENT

#### A. Summary Judgment Standard

The summary judgment process is designed to avoid unnecessary trials when there is no dispute as to the material facts before the Court. *Semegen v. Weidner,* 780 F.2d 727, 732 (9th Cir. 1985). Under Rule 56, summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Vasquez v. Cty. of L.A.,* 349 F.3d 634, 639-40 (9th Cir. 2003). To avoid summary judgment, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), and "must produce at least some significant probative evidence tending to support the complaint," *Smolen v. Deloitte, Haskins & Sells,* 921 F.2d 959, 963 (9th Cir. 1990). A mere "scintilla" of evidence is not sufficient, and neither are bare allegations, speculations, or conclusions. *Nelson v. Pima Cmty. Coll.,* 83 F.3d 1075, 1081 (9th Cir. 1996). An absence of evidence to support Plaintiff's claims requires granting summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Applying these tenets, Boeing is entitled to summary judgment on Bernal's claims.

//

BOEING'S MOTION FOR SUMMARY JUDGMENT - 6
Case No. 2:22-cv-00533-TL

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

B.  **Each of Bernal's Claims Concerning Discrete, Purportedly Retaliatory Actions Are Time-Barred Because Each Such Action Was Decided, Communicated and/or Implemented More Than Three Years Before He Filed This Lawsuit**

Washington Law Against Discrimination ("WLAD") retaliation claims have a 3-year statute of limitations. RCW 49.60; RCW 4.16.080(2); *see generally, Antonius v. King County,* 153 Wn.2d 256, 261-62, 103 P.3d 729 (2004); *Douchette v. Bethel Sch. Dist. Nol. 403,* 117 Wn.2d 805, 809, 818 P.2d 1362 (1991)(*citing, Del. State Coll. v. Ricks,* 449 U.S. 250, 101 S. Ct. 498 (1980)("…claims for employment discrimination accrue when notice of termination is communicated to the employee."). Actionable discrete events must occur within the limitations period. *Antonius,* at 264. "For discrete acts, the limitations period runs from the act itself, and if the limitations period has run, a discrete act is not actionable even if it relates to acts alleged in timely filed charges." *Antonius,* at 264, *citing, National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 108-13 (2002).

The original notice of the decision to reassign (08/02/2018), the written record of the final decision to implement the reassignment (03/20/2019), and the final communication of the implementing decision to reassign (04/08/2019), all occurred outside of the limitations period. Each of these events occurred more than three years before he filed his lawsuit, and Bernal is therefore precluded from seeking relief for any such purported act of retaliation. The same is true for the purportedly retaliatory annual performance review that was given to Bernal in December 2018. Bernal testified that he believed in December 2018 that this performance review was retaliatory. And, the same is true for the allegedly wrongful August 2018 decision to place someone else in the Intellectual Property enforcement management role he deigned to accept after first telling Svoboda and others he had no interest in the job. Again, Boeing denies that any of these acts were retaliatory or otherwise improper. But, even assuming for purposes of this summary judgment motion that there was something improper about these actions, the law is clear: Any claim concerning these discrete acts is time barred because it accrued and expired well outside the applicable 3-year limitations period.

BOEING'S MOTION FOR SUMMARY JUDGMENT - 7
Case No. 2:22-cv-00533-TL

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

The statute of limitations commences under both state and federal workplace anti-discrimination laws on the date an adverse employment action is final and communicated to the employee. *Delaware State College v. Ricks,* 449 U.S. 250, 258 (1980); *see also Albright v. State, Dep't of Soc. & Health Servs. Div. of Developmental Disabilities*, 65 Wn. App. 763, 767, 829 P.2d 1114, 1116 (1992) (adopting *Ricks* for WLAD claims). *Ricks* and *Albright* apply equally to discrimination and retaliation claims. *See McDermott v. Brennan,* NO. C19-0714-JCC, 2020 WL 1847781, *2 (W.D. Wash. Apr. 13, 2020) (applying *Ricks* to retaliation claim). *See also unpublished decision, Kuehn v. Snohomish County,* (No. 71743-0-I (2015 Wash App. LEXIS 730)) (Where employee commenced lawsuit more than three years after receiving his termination letter communicating a future termination date, the action was time-barred under WLAD). In the case at bar, Bernal's reassignment was decided no later than March 20, 2019, and was final and communicated to Bernal on April 8, 2019, but he did not file his lawsuit until April 15, 2022. Summary judgment should therefore be entered in Boeing's favor.

C. **Bernal's New Theory of Retaliatory Hostile Work Environment Pled in His First Amended Complaint ("FAC") is Primarily Based on Time-Barred Conduct, and the Post-April 15, 2019 Conduct Describes Only Minor Slights and Inconveniences.**

Bernal seeks to evade the statute of limitations based on purported indignities, inconveniences and petty complaints allegedly arising less than three years before he filed his lawsuit. (FAC, pp.14-18, para. 54-71). These claims should be rejected. For example, neither Bernal's subjective (and purported) belief that he did not receive sufficient public praise for completing a project, nor his purported and subjective feeling about receipt or non-receipt of *ice-cream tokens* after another project does not give rise to a legal claim.

"Washington courts have long made clear that the WLAD is not a 'general civility code.'"[3]

---

[3] *Bell v. Boeing Co.,* 599 F.Supp.3d 1052 (W.D. Wash. 2022)(2022 U.S. Dist. LEXIS 72549,*46) (April 20, 2022), citing, *Alonso v. Qwest Commc'ns Co., LLC,* 178 Wn. App. 734, 315 P.3d 610, 617 (Wash. Ct. App. 2013). And, "not everything that makes an employee unhappy is an actionable adverse action." *Id., citing, e.g., Kirby v. City of Tacoma,* 124 Wn. App. 454, 98 P.3d 827, 837 (Wash. Ct. App. 2004) ("insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are not adverse employment actions); *Boyd v. State,* 187 Wn. App. 1, 349 P.3d 864, 870 (Wash. Ct. App. 2015) (mere "inconveniences" do not qualify). The *Bell v. Boeing* decision explained: "An action will be considered 'adverse' if it is 'reasonably likely to deter employees from engaging in protected activity.' *Id.,*

BOEING'S MOTION FOR SUMMARY JUDGMENT - 8
Case No. 2:22-cv-00533-TL

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

"'Not every employment decision amounts to an adverse employment action,' even decisions that negatively impact an employee." *Simmons v. State*, 187 Wn. App. 1041 (2015) (*quoting Strother v. S. Cal. Permanente Med. Grp.,* 79 F.3d 859, 869 (9th Cir. 1996)). To be actionable, the act "must produce a material employment disadvantage" and be "more than an inconvenience," *id.* (citations omitted), rising to the level of a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," *id.* (*quoting Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

### 1. Bernal's List of Personal Slights is Not Actionable.

Bernal alleged in the First Amended Complaint:

- He was not provided "organized training" following his demotion; instead, he had to get on-the-job training from his coworkers. FAC ¶ 57.

- He had to sit in a cubicle area (that employees allegedly called the "Green Mile")

- Boeing's (pre-pandemic) rule of no remote work in the first six months of a job was applied to him. FAC ¶ 59.

- His new manager limited, but did not prohibit, his internal "volunteer" roles at Boeing. FAC ¶¶ 61-63, 65.

- He was required to give his manager access to his work calendar, and to tell his manager who he was mentoring during work hours, and where. FAC ¶ 64.

- His manager downplayed his accomplishment of completing a major project, and awarded him tokens for free ice cream when he thought he deserved more substantial recognition. FAC ¶¶ 67-69.

- He disagreed with his manager on whether he had missed the deadline for the major project, and thus whether that should have been included in his annual performance review. FAC ¶ 70.

- During the pandemic, when Bernal's only contact with his manager was through video calls, she was often late to join the calls and was sometimes eating lunch or seemed

---

*citing, Daniel,* 764 F. Supp. 2d at 1246 (internal quotation marks and citation omitted); *accord Boyd,* 349 P.3d at 870.

BOEING'S MOTION FOR SUMMARY JUDGMENT - 9
Case No. 2:22-cv-00533-TL

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

distracted during the calls. FAC ¶ 71.

This list is all of the allegedly retaliatory conduct that Bernal claims occurred on or after April 15, 2019.

Applying the definition of harassing acts under the WLAD to this list, as a matter of law:

- None of the conduct on this list is physically threatening.

- None of the conduct on this list is humiliating.

- None of the conduct on this list unreasonably interfered with Bernal's work performance—indeed, Bernal specifically pleads that during this period of alleged mistreatment, "Bernal excelled at his work" (FAC ¶ 66).

- None of the conduct on this list is objectively abusive.

Bernal has no actionable legal claims within the limitations period.

**2. Bernal's List of Personal Slights by a New Supervisor After Director Svoboda Retired does Not Meet the WLAD Definition of Hostile Work Environment.**

Mere offensive behavior, without more, is insufficient to support a hostile work environment claim. *Clarke v. State Att'y Gen.'s Off.,* 133 Wn. App. 767, 784, 138 P.3d 144, 153 (2006), *citing, Adams v. Able Bldg. Supply, Inc.,* 114 Wn. App. 291, 296, 57 P.3d 280 (2002). Even casual, isolated or trivial instances of a discriminatory environment do not affect the terms or conditions of employment to a sufficiently significant degree to violate the law. *Glasgow v. Georgia-Pac. Corp.,* 103 Wash. 2d 401, 406, 693 P.2d 708, 712 (1985). Mere "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998).

Nothing alleged by Bernal after April 15, 2019 regarding manager Linda Beltz was severe or pervasive. To determine whether a work environment is sufficiently hostile to violate the WLAD, Washington courts look "at all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere

BOEING'S MOTION FOR SUMMARY JUDGMENT - 10
Case No. 2:22-cv-00533-TL

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Faragher,* 524 U.S. 775, 787-88; *MacDonald v. Korum Ford,* 80 Wn. App. 877, 885, 912 P.2d 1052, 1058 (1996) (employing federal "totality of the circumstances" analysis in determining whether a hostile environment existed in violation of the WLAD). As against this high standard, Bernal's post-April 15, 2019 retaliatory hostile work environment allegations against Ms. Beltz blatantly fail. *These same allegations are also not related to the untimely allegations against Bernal's previous supervisor, Rick Svoboda.*[4] Summary judgment should therefore be entered in Boeing's favor on Bernal's retaliatory hostile work environment claims.

## IV. CONCLUSION

Bernal filed this lawsuit on April 15, 2022. Bernal was told by Svoboda on April 8, 2019 that he would no longer be a manager and was given a transfer letter on April 10, 2019. This letter followed more than eight months of conversations between Bernal and his supervisor Svoboda where Svoboda told Bernal that he needed to find himself another management job after having rejected the enforcement job. These discrete acts, beginning in spring 2018, occurred outside the limitations period, and any claim concerning these acts is therefore time-barred. Boeing therefore respectfully asks the Court to enter summary judgment in its favor on each of these claims.

With respect to actions purportedly taking place after April 15, 2019, none of these purported actions, alone or in combination, rise to the level of a retaliatory hostile work environment under WLAD. Bernal's retaliation claims under the WLAD, whether for discrete acts or retaliatory hostile work environment, should be dismissed as a matter of law.

//

//

---

[4] Expired acts that occurred outside the limitations period that are not related to timely acts do not constitute one hostile work environment. Washington courts are required to factor in discrete timeframes, unconnected conduct and separate managers. *See, Crownover v. Department of Transportation,* 165 Wn. App. 131, 144, 265 P.3d 971 (2011); *Antonius,* 153 Wn.2d at 271 (quoting *Morgan,* 536 U.S. at 120, 122 S. Ct. 2061, 153 L. Ed. 2d 106).

BOEING'S MOTION FOR SUMMARY
JUDGMENT - 11
Case No. 2:22-cv-00533-TL

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

Respectfully submitted this 23rd day of February, 2023, at Seattle, Washington.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ Laurence A. Shapero*
By: */s/ Brenda L. Bannon*
    Laurence A. Shapero, WSBA No. 31301
    Brenda L. Bannon, WSBA No. 17962
    1201 Third Avenue, Suite 5150
    Seattle, WA  98101
    Telephone:   (206) 693-7057
    Facsimile:    (206) 693-7058
    Email:  laurence.shapero@ogletree.com
            brenda.bannon@ogletree.com

*Attorneys for Defendant*

BOEING'S MOTION FOR SUMMARY JUDGMENT - 12
Case No. 2:22-cv-00533-TL

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

**CERTIFICATE OF SERVICE**

I hereby certify that on February 23, 2023, I served the foregoing DEFENDANT'S MOTION FOR SUMMARY JUDGMENT via the method(s) below on the following parties:

> Margaret M. Boyle, WSBA #17089
> BOYLE MARTIN THOENY, PLLC
> 100 West Harrison Street, Suite S300
> Seattle, WA 98119
> Tel: 206-217-9400
> Fax: 206-217-9600
> Email: margaret@bmtlitigation.com
>
> *Attorney for Plaintiffs*

☒ by **electronic** means through the Court's Case Management/Electronic Case File system, which will send automatic notification of filing to each person listed above.

☐ by **mailing** a true and correct copy to the last known address of each person listed above. It was contained in a sealed envelope, with postage paid, addressed as stated above, and deposited with the U.S. Postal Service in Seattle, Washington.

☐ by **e-mailing** a true and correct copy to the last known email address of each person listed above.

SIGNED THIS 23rd day of February, 2023 at Seattle, Washington.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ Valencia H. Mayfield*
Valencia H. Mayfield, Practice Assistant
valencia.mayfield@ogletree.com

BOEING'S MOTION FOR SUMMARY JUDGMENT - 13
Case No. 2:22-cv-00533-TL

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058