UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PAUL BERNAL and JACK COE,<br><br>            Plaintiffs,<br>      v.<br><br>THE BOEING COMPANY,<br><br>            Defendant. | CASE NO. 2:22-cv-00533-TL<br><br>ORDER DENYING MOTION TO DISMISS |

This matter comes before the Court on Defendant the Boeing Company's Rule 12(b)(6) motion to dismiss Plaintiff Paul Bernal's sole claim of retaliation in violation of the Washington Law Against Discrimination ("WLAD"), RCW 49.60 *et seq*. Dkt. No. 18. Having reviewed the relevant record and governing law, the Court DENIES the motion.

I.   BACKGROUND

Plaintiffs Paul Bernal and Jack Coe filed this case in King County Superior Court on April 15, 2022. Dkt. No. 1-1 (original complaint).[1] Defendant Boeing removed the case to this

---

[1] This Order does not address the facts relevant to Jack Coe, as the motion to dismiss is limited to Bernal's claim. *See* Dkt. No. 18. A stipulated request to dismiss Coe from this case has since been filed. Dkt. No. 34. Because the

1  Court on April 21, 2022 (Dkt. No. 1) and filed a motion to dismiss on May 10, 2022 (Dkt. No.

2  13). Defendant withdrew its initial motion to dismiss (*see* Dkt. No. 16) upon Plaintiffs' filing of

3  a First Amended Complaint (Dkt. No. 15) and filed the pending motion to dismiss the First

4  Amended Complaint on June 14, 2022. Dkt. No. 18.

5        Bernal is a current employee of Defendant Boeing, and he has been employed by

6  Defendant since 1989. Dkt. No. 18 at 2; Dkt. No. 15 ¶ 1.[2] He alleges having enjoyed "repeated"

7  promotions and "consistent positive performance reviews, pay raises, and bonuses" until the

8  complained-of events. Dkt. No. 15 ¶ 1. In 2011, Bernal was promoted to a managerial position

9  for the Boeing Intellectual Property Licensing Company ("BIPLC"). *Id.* In 2013, Rick Svoboda

10  became Bernal's supervisor. *Id.* In 2015, Svoboda hired Linda Beltz to work as Bernal's senior

11  management peer. *Id.* ¶ 2. Plaintiffs contend that Beltz "developed a reputation for creating and

12  fostering a hostile work environment for BIPLC's most senior employees by directly and

13  indirectly targeting them for heightened scrutiny of their work performance, heightened

14  surveillance, disparate discipline, and persistent, humiliating, and degrading comments related to

15  their work, writing abilities, and dress." *Id.* ¶ 4; *see also id.* ¶¶ 6–8, 11, 14–15, 21. Plaintiffs

16  allege that in a July 2018 meeting, Svoboda informed Bernal that his team would be required to

17  work closely with Beltz and that Svoboda was angered when Bernal responded that he would go

18  directly to Human Resources if Beltz engaged in behavior targeting him or his team members.

19  *Id.* ¶¶ 21–23. They allege that Bernal's relationship with Svoboda subsequently deteriorated,

20  with Svoboda labeling Bernal as a "disgruntled" employee and informing him that he had "until

21

22  stipulated request was filed after the motion to dismiss had been fully briefed, the Court references "Plaintiffs" when discussing the Parties in this Order.

23  [2] The First Amended Complaint contains two sets of paragraphs numbered as "1" and "2." For simplicity and readability, the Court references the paragraphs in the complaint by their numbers as shown from pages 2 through

24  the end.

ORDER DENYING MOTION TO DISMISS - 2

the end of the year to find another management position at Boeing or Svoboda would demote him out of management." *See id.* ¶¶ 25–26, 29–30.

Plaintiffs allege that during a monthly one-on-one meeting on April 8, 2019, Svoboda informed Bernal that he would soon be "drastically demoted" from his managerial position to a non-managerial one (an IP Licensing Specialist position) on April 19. *Id.* ¶¶ 1, 48, 55. The complaint also references an April 10, 2019, letter from a Boeing recruiter. *Id.* ¶ 49; *see also* Dkt. No. 19-1 ("April 10th letter"). The letter explained that Bernal was receiving a "reassignment notification based on surplus" and, pending an eligibility determination, offered Bernal an IP Licensing Specialist position. *Id.* ¶¶ 49–51; Dkt. No. 19-1. Plaintiffs further allege that on April 12, 2019, Bernal received a letter from the same Boeing recruiter identical to the April 10th letter, except that it listed Beltz (rather than Svoboda) as the supervisor for the "tentatively offered reassignment position."[3] *Id.* ¶ 53. They also allege that "[on] April 18, 2019, Bernal was informed that the reassignment offer was no longer tentative and the reassignment would go forward" and that on the same day, Svoboda emailed the relevant work teams within Boeing to inform them of the reassignment. *Id.* ¶ 54.

## II.   LEGAL STANDARD

When a plaintiff "fails to state a claim upon which relief can be granted," the defendant may move for dismissal. Fed. R. Civ. P. 12(b)(6). In reviewing a 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[3] The Parties appear to disagree that Boeing ever sent a letter to Bernal on April 12, 2019. Defendant supports its motion to dismiss with an attachment that features a letter dated April 10, 2019, that matches the description in the complaint but lists Beltz, not Svoboda, as the proposed supervisor. Dkt. No. 19-1 at 2. In their response brief, Plaintiffs cite to this attachment as the April 12, 2019, letter. Dkt. No. 22 at 15–16. And in reply, Defendant contends that Bernal wants the Court to focus "on a letter that Boeing provided to him on April 10, 2019 (and allegedly again on April 12, 2019)." Dkt. No. 24 at 3.

ORDER DENYING MOTION TO DISMISS - 3

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 672. "When reviewing a dismissal pursuant to Rule . . . 12(b)(6), 'we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[ ], the non-moving party.'" *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (second alteration in original) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

### III.     DISCUSSION

The instant motion centers on whether Bernal's WLAD retaliation claim was timely filed. Defendant argues that this case was filed seven days after the statute of limitations had run for Bernal's claim. Dkt. No. 18 at 1–2 (motion to dismiss contending that the injury accrued on April 8, 2019, but the complaint was not filed until April 15, 2022). Bernal has pleaded two theories to support his retaliation claim: (1) a retaliatory demotion, and (2) in the alternative, a hostile work environment. Dkt. No. 22.

A three-year statute of limitations applies to WLAD claims. *Antonius v. King Cnty.*, 103 P.3d 729, 732 (Wash. 2004) (en banc) (explaining that because WLAD does not contain its own limitations period, the general three-year statute of limitations for personal injury actions in RCW 4.16.080(2) applies). The three-year clock begins to run when the decision to take the adverse employment decision is final and communicated to the employee, even if the effects of that decision are not felt until later. *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980); *accord Albright v. State, Dep't of Soc. & Health Servs. Div. of Developmental Disabilities*, 829 P.2d 1114, 1116 (Wash. Ct. App. 1992) (adopting the *Ricks* standard to a WLAD claim, explaining

that the statute of limitations did not accrue until a request for disability-related accommodation was "officially denied and communicated to [the plaintiff]").

A.     **Retaliatory Demotion Claim**

While the Parties agree that *Ricks* and *Albright* apply to Bernal's retaliatory demotion claim (*see* Dkt. No. 16 at 5; Dkt. No. 22 at 14; Dkt. No. 24 at 2), they contest the date on which that demotion became final. Defendant urges the Court to consider the notice Bernal received on April 8, 2019, to be a communication of a final employment decision to demote him to a non-managerial position (Dkt. No. 18 at 1–2, 7), while Plaintiffs maintain that the decision was not final until April 18, 2019, when Bernal was notified "that Defendant had made a final decision to place him in the non-management position" (Dkt. No. 22 at 17).

As pleaded in the operative complaint, the date Bernal's demotion was final and communicated to him was April 18, 2019. *See* Dkt. No. 15 ¶ 54.[4] In *Ricks*, the Supreme Court determined that the employer (a college) had established a final position (to award a terminal teaching contract) and communicated it to the employee (an untenured professor) by a specific date because by then the tenure committee had twice recommended that the professor not receive tenure, the faculty senate had voted to support that recommendation, and the board of trustees had also voted to deny the employee tenure. 449 U.S. at 261–62.

Defendant Boeing has not established a similar level of finality with respect to its decision to demote Bernal expressed by Svoboda on April 8, 2019, during their monthly meeting. To the contrary, Defendant does not provide any further detail about the April 8th conversation between Svoboda and Bernal. Further, Defendant does not deny that: (1) it

---

[4] The specific allegations made in the First Amended Complaint are: "On April 18, 2019, Bernal was informed that the reassignment offer was no longer tentative and the reassignment would go forward. Svoboda sent out an email later that day informing [the relevant work groups] of the upcoming change." Dkt. No. 15 ¶ 54.

continued to communicate with Bernal about the issue, sending him at least one letter after April 8th that included in bold-faced type "**Your reassignment is contingent upon the following**" (and, indeed, Defendant includes a copy of one of these letters with its motion);[5] (2) Bernal was informed on April 18, 2019, that the reassignment offer was no longer tentative and the reassignment would go forward; and (3) an email informing other staff of Bernal's demotion was not sent out until April 18, 2019. Accepting all these facts as alleged in the First Amended Complaint as true and construing them in the light most favorable to Plaintiffs—as the Court must on a motion to dismiss—there would have been no reason to inform Bernal that the reassignment offer was no longer tentative on April 18, 2019, if the decision had been final before that date.

Therefore, Bernal's retaliatory demotion claim was timely under Washington law, and the Court DECLINES TO DISMISS this claim from the complaint.

### B.   Hostile Work Environment Claim

"A hostile work environment 'occurs over a series of days or perhaps years . . . . Such claims are based on the cumulative effects of individual acts.'" *Loeffelholz v Univ. of Wash.*, 285 P.3d 854, 857 (Wash. 2012) (en banc) (quoting *Antonius*, 103 P.3d at 734). An employer can be held liable for hostile work environment conduct occurring more than three years before the plaintiff filed suit (*i.e.*, before the "filing" or "limitations" period) if at least one act "contributing to the claim occurs within the filing period." *Antonius*, 103 P.3d at 734 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). In such a case, "the entire time period of the hostile work environment may be considered by a court for the purposes of determining

---

[5] Bernal includes in his First Amended Complaint that the "letter specified that Boeing's offer was tentative." Dkt. No. 15 ¶¶ 50–51. Bernal also alleges that he was sent two copies of the April 10th letter, and the first version of the letter listed Svoboda as his manager, which was contrary to what he was told on April 8th. *Id.* Defendant is silent with regard to this allegation.

liability." *Id.* (quoting *Morgan*, 536 U.S. at 117). So, to determine whether a WLAD claim is timely based on a hostile work environment theory, the Court must "determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Loeffelholz*, 285 P.3d at 858 (quoting *Antonius*, 103 P.3d at 737). While the discriminatory acts "must have some relationship to each other," "[t]he standard for linking discriminatory acts together in the hostile work environment context is not high." *Id.* at 859.

"Conduct that supports a hostile work environment claim must be so pervasive as to alter the terms and conditions of employment and create an abusive working environment." *Clarke v. State Att'y Gen.'s Off.*, 138 P.3d 144, 154 (Wash. Ct. App. 2006). "The conduct must be both objectively abusive and subjectively perceived as abusive by the victim." *Id.* Courts applying Washington law to hostile work environment claims consider "the frequency and severity of harassing conduct, whether it was physically threatening or humiliating, or merely an offensive utterance, and whether it unreasonably interfered with the employee's work performance." *Alonso v. Qwest Commc'ns Co., LLC*, 315 P.3d 610, 619 (Wash. Ct. App. 2013) (citing *Washington v. Boeing Co.*, 19 P.3d 1041, 1046–47 (Wash. Ct. App. 2000)). With regard to offensive comments, "[h]umiliation, emotional distress, absence from work, or 'friction' with other employees are sufficient to create an 'inference' that such reactions resulted from a hostile work environment." *Coles v. Kam-Way Transp.*, 200 Wash. App. 1038, 2017 WL 3980563, at *5 (Sept. 11, 2017).[6]

Plaintiffs filed this lawsuit on April 15, 2022, so the limitations period would have begun three years earlier, on April 15, 2019. Defendant appears to concede that Plaintiffs have alleged

---

[6] No Pacific Reporter citation is available for this case.

ORDER DENYING MOTION TO DISMISS - 7

acts of harassment prior to the beginning of this limitations period. *See* Dkt. Nos. 18, 24. So the Court focuses its inquiry on whether the First Amended Complaint sufficiently alleges discriminatory acts that occurred after the limitations period began.

Bernal's demotion occurred after April 15, 2019, and that alone would suffice to link the prior alleged discriminatory acts into a single claim. But Plaintiffs have also pleaded other relevant acts occurring to Bernal within the limitations period: (1) lack of training for his new position or "on the computer programs necessary to do it" (Dkt. No. 15 ¶ 57); (2) his assignment to a cubicle (a downgrade from his private office) that was located behind a row referred to by other employees as the "Green Mile" (*id.* ¶ 58); (3) being subjected to new-hire probation restrictions on remote work (*id.* ¶ 59);[7] (4) being pressured to resign from "prestigious Boeing volunteer roles and being cut off from budget for that work" (*id.* ¶¶ 61–66); (5) actually resigning from a formal advisory role upon receiving mounting pressure from his new supervisor to do so—a pressure campaign that the supervisor brought the new BIPLC Director into (*id.* ¶¶ 61–63); (6) his new supervisor demanding full access to his calendar and for him to identify his mentees (*id.* ¶ 64); (7) having his work downplayed, diminished, and even mocked, for example by being given tokens for free ice cream from the cafeteria rather than other recognition for completion of a "significant work assignment" (*id.* ¶¶ 67–69); (8) being provided with a performance review that falsely accused him of failing to meet a significant deadline and implying he misrepresented the deadline (*id.* ¶ 70; *see also* Dkt. No. 22 at 22); and (9) experiencing his supervisor being frequently late for meetings with him, and during those meetings having her often seem "distracted or doing something else during the call, like making

---

[7] Plaintiffs allege that "Bernal believed the only reason Svoboda and Beltz applied the probationary policy was to further humiliate him, which it did." Dkt. No. 15 ¶ 59. Bernal had, at that point, been working at Boeing for thirty years. *See id.* ¶ 1.

ORDER DENYING MOTION TO DISMISS - 8

lunch or eating" (*id.* ¶ 71). Construing these facts in the light most favorable to Plaintiffs, the Court finds they have adequately alleged a hostile work environment that began before—and continued into—the limitations period.

## IV.   CONCLUSION

For the above reasons, the Court DENIES Defendant Boeing's motion to dismiss (Dkt. No. 18).

Dated this 8th day of March 2023.

Tana Lin
United States District Judge