THE HONORABLE TANA LIN

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| PAUL BERNAL and JACK COE, individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>THE BOEING COMPANY,<br><br>Defendant. | Case No. 2:22-cv-00533-TL<br><br>**DEFENDANT THE BOEING COMPANY'S REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>NOTED:  March 17, 2023 |

## I.      ARGUMENT IN REPLY.

### A.      <u>Introduction.</u>

Boeing seeks summary judgment on Bernal's claims because (1) each of the discrete employment acts giving rise to his retaliation claim occurred more than three years before he filed his lawsuit, and (2) no purported workplace harassment within the limitation period rose to the level of a "hostile work environment." Bernal seeks to obscure and confuse the material undisputed facts by offering new allegations that are inconsistent with his prior testimony or pleadings, and by asking the Court to ignore key aspects of an April 10, 2019 letter from Boeing Human Resources. Nonetheless, it remains undisputed that the only three discrete, allegedly retaliatory acts giving rise to his claims all occurred more than three years before he filed this lawsuit, and are therefore time barred. Bernal concedes in his Complaint, his Amended Complaint and his deposition testimony:

1

2

- His manager told him on August 2, 2018 that another manager had been hired to lead the Intellectual Property Enforcement team and, as a result, Bernal would be removed from his management job and placed in an individual contributor role if he did not soon find another management position outside of Boeing's Intellectual Property Group.

3

4

5

- He received a performance review in December 2018 that he considered to be retaliatory, and which he also believed would negatively impact his pay and future prospects at Boeing.

6

7

8

- His manager told him on April 8, 2019 that his time had run out to find a new management role, and that he was therefore being removed from his management position and demoted to an individual contributor role, or his employment would be terminated.  This verbal notice on April 8 was followed two days later by a letter that also said his employment would be terminated if he did not soon accept reassignment to that individual contributor position.

9

Bernal concedes – indeed, he actually *pleads* – that all of this happened more than three years

10

before his lawsuit was filed on April 15, 2022.

11

       In an effort to avoid summary judgment, Bernal points to language in the April 10 letter

12

which he claims said *it was not yet clear whether Bernal was eligible to accept the specific*

13

*individual contributor role described in the letter.* He also changed his story about when he

14

received the letter. But that letter was crystal clear about the essential facts giving rise to his claim:

15

The April 10 letter clearly told Bernal his management position had been eliminated and his

16

Boeing employment would end no later than April 19 unless he first accepted reassignment to an

17

individual contributor role.  *The only potential lack of clarity created by the April 10 letter was*

18

*whether Bernal would be entitled to continue his Boeing employment with his base salary of almost*

19

*$200,000.*  Otherwise, Bernal knew on April 8, 2019 and on April 10, 2019—just as he had known

20

since August 2018—that he was being removed from the management job.

21

       Because Bernal also admits in his pleadings and his testimony that he firmly believed on

22

April 8 and April 10, 2019—and again way back in August 2018—that these actions were

23

retaliatory, he was obligated to seek relief from this Court no later than April 8 (or perhaps April

24

10), 2022 if he wanted to obtain such relief.  Because he failed to do so, his claims that are based

25

on these discrete acts should be rejected.

26

    /

DEFENDANT'S REPLY IN SUPPORT
OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 2
Case No. 2:22-cv-00533-TL

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

1

2

**B.** **Boeing's Decision to Demote Bernal From His Management Position Was Final and Communicated to Bernal on April 8, 2019.**

3

As Bernal concedes in his First Amended Complaint, his manager Rick Svoboda met with

4

him on April 8, 2019 and told him he was being reassigned to a non-manager role:

5

48. On **April 8, 2019, Bernal met with Svoboda for their monthly 1:1 meeting.**
**Svoboda informed Bernal that on April 19th he would not only be drastically**
**demoted to an IP Licensing Specialist position,** but that he would be directly
reporting to none other than Beltz. Svoboda also told Bernal that he had 10 days to
accept the transfer or he would be terminated. [emphasis added].

6

7

8

First Amended Complaint ("FAC"), Para. 48. (*Dkt. No. 15*). Bernal admits this again in his new

9

Declaration. *Pl. Opp. Decl., Dkt. 37,* Para. 28.

10

Previously, on August 2, 2018, Bernal participated in a phone call with Svoboda, who

11

informed him that he had 90-days to find another manager position within Boeing or else he would

12

be "demoted out of management":

13

Q.    Okay.  So there was a second call on August 2; is that true?

14

A.    That is correct.

15

Q.    Tell me about that second call.

16

17

A.    That second call was in the afternoon.  I don't recall the exact time.  Maybe
close to the 5 o'clock hour.  And Rick Svoboda called and informed me that I was
no longer going to be the enforcement manager, that he did not want a disgruntled
employee managing the team. I asked him to identify who told him that because
I'm not disgruntled.  I never shared with anybody that I was disgruntled.  I was
actively working the workshop and communicating with potential team members.
And he said, Everybody.  And I said, Who? Who is everybody?  Because you're in
St. Louis.  I don't know who could be saying these things. And he did not provide
any names. **He just said, Well, this decision has been made**.  Angela Smith will
now be leading enforcement.  We're going to give you back GP&T but with fewer
resources.  And we would like you to develop several options of how GP&T can
move forward, kind of right-sizing it, and **you have 90 days to pull these together,**
**present them, find another job outside of intellectual property, or you will be**
**demoted out of management.**

18

19

20

21

22

23

24

***

25

Q. "After the deep dive on the afternoon of August 2, you had a phone call with
Rick Svoboda where he told you that he did not want a disgruntled employee on

26

DEFENDANT'S REPLY IN SUPPORT
OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 3
Case No. 2:22-cv-00533-TL

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

the team leading the enforcement… he also wanted you in that intervening time of 90 days, so three months, to find another job which would be a management role or else move out of management; is that correct?

A. Yeah, he would demote me. **He used the words, I would demote you out of management."** (emphasis added)).

*Bernal Dep., 79:7- 80:9*[1] (emphasis added) (*see also Bernal Dep., 82:1 – 82:*16 (emphasis added)).

This is the same conversation described by Bernal in his FAC, Para 30 ("find another management position at Boeing or **Svoboda would demote him out of management**…)

Plaintiff also admitted in his FAC that on April 10, 2019, he received a letter from Boeing informing him that he was being reassigned to an IP Licensing Specialist position:

49. On April 10, 2019, Bernal received a letter from a Boeing recruiter informing him that Boeing had determined that either he or his position – the letter did not make this clear – was "surplus."…

\*\*\*

50. In the same letter, Boeing then makes Bernal a tentative "offer" for an "equivalent redeployment reassignment" **to an IP Licensing Specialist** position in which he would keep his same level of pay and be supervised by Svoboda. [emphasis added].

FAC, Para. 49 & 50.

Bernal's FAC continues by admitting Bernal received a second identical letter two days later but clarifying that his supervisor would be Linda Beltz:

53. On April 12, 2019, Bernal received another letter from the same Boeing recruiter. This letter was identical to the one Bernal received on April 10th with one exception: the tentatively offered reassignment position would be supervised by Beltz rather than Svoboda;

FAC, Para. 53.  But, as explained above, Bernal's FAC earlier explained that he had already been told by Svoboda on April 8 that he would report in his new job to Beltz, so there was nothing new in this April 12 letter.  In his deposition, Bernal admitted that Svoboda had spoken with him about

---

[1] Bernal Deposition excerpts are found in *Ex. B to Bannon Decl. ISO MSJ (Dkt. No. 31).* Supplemental Bernal Deposition pages 82 and 120-122 are found in *Exhibit D to Bannon Reply Declaration.*  The April 10, 2019 demotion letter is found in *Ex. C & D, Bannon Decl. ISO MSJ.*

DEFENDANT'S REPLY IN SUPPORT
OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 4
Case No. 2:22-cv-00533-TL

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

the demotion in the weeks leading up to receiving the April 10, 2019 letter, that the letter itself informed him that he was being reassigned to a new position, and that he had been provided since August 2, 2018 to find a new manager position. *Bernal Dep., 120:18—122:2; see also Bernal Dep., 79:7- 80:9, supra.* (**"…you will be demoted out of management."** (emph. added); *Pl. Opp. Decl., Para. 18* (**"I'd be demoted"**). (emph. added).

Based on Bernal's own admissions, the discrete act of demotion accrued on April 8, 2019. This is the date Bernal knew his demotion was finally being implemented after first being communicated to him the previous August.  The follow-up letters and background email as to the process details were simply administrative record-keeping and communications for the work group as a whole (payroll, HR, co-workers, and new supervisor).  The statute of limitations expired on April 8, 2022 as a matter of law.  Even if we accept Bernal's characterization that he did not "know" about the demotion until he received the April 10 letter that (i) repeated what Svoboda told him on April 8, and (ii) had an April 19, 2019 effective date, Washington law provides that, where an employee receives a letter communicating an adverse action to commence at a future date, the cause of action accrues as of the date the employee receives the letter.  *Albright v. State, Dep't of Soc. & Health Servs. Div. of Developmental Disabilities,* 65 Wn. App. 763, 767, 829 P.2d 1114, 1116 (1992) *See also unpublished decision, Kuehn v. Snohomish County,* (No. 71743-0-I (2015 Wash App. LEXIS 730)).  So again, if we construe every possible fact in favor of Bernal, his deadline to file a lawsuit in connection with his demotion was April 10, 2022, or April 12, 2022 at the latest. But he failed to file by that date.

Similarly, Bernal's only other two discrete acts complained of in his FAC, and the only other potential sources of his alleged economic damages, are that (1) in July/August 2018 he was not placed in an enforcement manager job (or was removed from) that he had previously and publicly denigrated; and (2) in December 2018 he received a purportedly poor job review rating. Again, Bernal admits that these two events occurred in 2018. *(Bernal Dep., 79:7- 80:9; 86:18- 87:3; FAC, Paragraphs 29, 39).* Because Bernal did not dispute these facts or arguments in his

DEFENDANT'S REPLY IN SUPPORT
OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 5
Case No. 2:22-cv-00533-TL

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

1  Response, Defendant's Motion should be granted as to these two discrete acts.  As this Court has

2  found repeatedly, failing to respond to a moving party's arguments constitutes grounds for granting

3  a motion for summary judgment. *See, e.g., Colman v. City of Seattle*, No. C05-0754RSM, 2006

4  WL 1842978, at *4 (W.D. Wash. June 30, 2006) (finding plaintiff "concede[d] summary judgment

5  [was] appropriate" on certain claims by "fail[ing] to respond to" arguments in moving party's

6  brief); *Armstrong v. Cty. of Kitsap*, No. 04-cv-5461, 2006 WL 3192518, at *6 (W.D. Wash. Nov.

7  2, 2006) (similar).

8          C.     **<u>Decision to Not Assign/Remove Bernal from the Enforcement Manager</u>**

9               **<u>Role was Final and Communicated to Bernal on August 2, 2018.</u>**

        In his Response, Bernal misleadingly suggests he had happily embraced the proposed

10  Enforcement group leader role, stating he would "knock" the assignment "out of the park." But

11  Bernal fails to disclose the full context for that purported statement, apparently because he knows

12  this additional explanation confirms the wisdom of Svoboda's August 2018 decision not to give

13  him that job:

14  
15      Q.  Sir, isn't it true that you had told your team on GP&T that you really didn't
    want to do the enforcement management role?

16  
17      A.  What I shared with them is this isn't my preference, I'm not asking to do this,
    but I did share with my team at Rick's direction that I was taking over the
18      enforcement team, it wasn't my choice but I was going to do it with ultimate
    professionalism, and again, I used the words "knock it out of the park."

19  
20      Q.  Let me ask the question in a different way. I just want to give you an
    opportunity. Did you not, in fact, announce to your team before [you] said all those
21      things that you just told me that you really didn't want to do that enforcement
    management role?

22  
23      A.  I probably used the words that I was not happy about the decision, but
    ultimately it's Rick's decision and I've accepted the new position.  And I also shared
24      with my team, I don't know where you're going, who you're going to be underneath,
    because some of that is still in flux.

25      Q.  So you let them know that there was going to be a reorganization of the GP&T,
    correct?
26      A.  Yeah, because it was going another manager, and Rick and I discussed me

DEFENDANT'S REPLY IN SUPPORT
OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 6
Case No. 2:22-cv-00533-TL

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

having this conversation with my team.

*Bernal Dep., 82: 1-15, Bannon Reply Decl., Ex. D.*

Again, Bernal concedes that he told his team that they would soon be reporting to another manager instead of him.  Bernal also concedes this discrete act of being removed from the enforcement manager role happened in August 2018, more than six months outside the applicable limitations period. *Bernal Dep., 79:7- 80:*9 *(see also Bernal Dep. at 82:1 – 82:16; Pl. Opp. Decl., Para. 18* ("removed me from enforcement position"). Any cause of action stemming from this discrete act expired in August 2021.

**D.**   **Decision to Provide Bernal with His December 2018 Performance Evaluation Ratings Was Final and Communicated to Bernal in December 2018.**

Bernal admitted during his deposition that his 2018 performance review was final and delivered to him by Svoboda at the end of December 2018. *Bernal Dep., 86:18- 87:3.* This timing was admitted to in Bernal's Amended Complaint, Para. 39 ("Also in December [2018], Bernal received his 2018 performance review from Svoboda . . . Yet, despite Bernal's [2018] metric results, Svoboda gave Bernal a rating of '.85'").  At the end of the December 2018 process, Bernal wrote his own employee comments in rebuttal. *Id., 87:5-88:13; 89:22-25; FAC, Para. 40. See also, Pl. Opp. Decl., Para 23 ("received my 2018 performance review in December").*

The discrete act of providing a December 2018 performance review rating was final and communicated to Bernal in December 2018.  Thus, any cause of action stemming from this discrete act expired in December 2021 – long before Bernal's original complaint was filed in this case on April 15, 2022.

**E.**   **Ongoing Retaliatory Hostile Work Environment Claim Fails as a Matter of Law.**

Although certain events outside the limitations period can combine with more recent events to form part of a *continuing violation* (*Morgan*, 536 U.S. 101, 115-116), there is no such *continuing violation* where, as here, such events are separated by time, involve different types of conduct, are

DEFENDANT'S REPLY IN SUPPORT
OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 7
Case No. 2:22-cv-00533-TL

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

infrequent, and are carried out by different managers. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005); *Crownover v. Department of Transportation,* 165 Wn. App. 131, 144, 265 P.3d 971 (2011), *citing, Morgan,* at 118.

Manager Svoboda retired in May 2019.  Decl., ¶ 2.  New Manager Linda Beltz' alleged post-April 18, 2019 offensive conduct or communications (FAC, pp.14-18, para. 54-71) are unconnected to former Manager Svoboda's 2018 communications with Bernal regarding finding a new manager role or receiving a demotion, denying the enforcement manager role, and providing the December 2018 performance evaluation ratings. Moreover, "[d]iscrete discriminatory acts or retaliatory employment action must always be within the statute of limitations to be actionable." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-16, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). "**Under the statute of limitations, 'the employee cannot recover for the previous acts, at least not by reference to [an unrelated timely act].'**" *Crownover,* at 142, *citing, Morgan* at 118 (emphasis added).

Because Bernal's post-April 18, 2019 retaliatory hostile work environment complaints about Ms. Beltz' treatment of him are unrelated to the pre-April 18, 2019 retaliatory complaints about Director Svoboda's treatment of him, the unrelated behaviors of Beltz do not revive any time-barred claims of retaliation by Svoboda. Beltz' post-May 2019 communication and conduct cannot as a matter of law constitute a continuing violation of harassment perpetrated by Svoboda.

## 2.  The Alleged Minor Slights by Manager Beltz after May 2019 are Not Cognizable.

Because WLAD is not a "general civility code," Bernal's complaints about purportedly inadequate training, being briefly subject to an on-site work expectation, not getting enough praise, not having focused attention during Zoom meetings, not liking the location of his new cubicle, getting criticized about missing a timeline, or having his DEI volunteer work curtailed, are not sufficient to constitute an actionable WLAD hostile work environment claim against Ms. Beltz. (FAC, pp.14-18, para. 54-71; *Pl. Opp. Decl., Para. 33-40*). *Bell v. Boeing,* 599 F. Supp. 3d 1052, 2022 U.S. Dist. LEXIS 22549 *46, (W.D. Wash. 2022), and cases compiled therein.

DEFENDANT'S REPLY IN SUPPORT
OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 8
Case No. 2:22-cv-00533-TL

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**F.      Changed Testimony and Shifting Positions Do Not Survive Summary Judgment.**

"[U]ncorroborated and self-serving" testimony cannot create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 1996). "[A] party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *See, Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266 (9th Cir. 1991). Nor can a declarant embellish prior deposition testimony "in a tactical attempt to evade an unfavorable summary judgment." *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.,* 397 F.3d 1217, 1225 (9th Cir. 2005). Similarly, litigants are estopped from taking inconsistent positions in order to gain tactical advantage. "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). Here, Bernal has alleged for the first time in his opposition declaration that "it appears" he actually received the second April 10, 2019 reassignment letter on April 15 instead of April 12 as alleged in his FAC, Para. 53. *See, Pl. Opp. Decl., Para 30*. His FAC was filed in May 2022 specifically to avoid Rule 12 dismissal. (*Dkt. No.* 15). The April 12, 2019 email documenting extending Plaintiff the reassignment offer letter is Exhibit 8 to Ms. Boyle's Declaration (Boeing-Bernal 02158). Bernal knew the offer was not "tentative" because he accepted it on April 17, 2019. Ex. 10 to Ms. Boyle's Declaration (Boeing-Bernal 02140). *See, Pl. Opp. Decl., Para. 30, at 10:7-10.*

Additionally, in his deposition, Bernal testified that he spoke to Svoboda about the decision to demote him *before* receiving both of the April 10, 2019 letters.  For the first time in his opposition declaration, Bernal alleges that he met with Svoboda on April 18, 2019 before receiving the group wide notification email, and Svoboda told him the "offer was no longer tentative."  At his deposition when asked about pre-April 18, 2019 email conversations with Svoboda, Bernal only referred to the April 8 reassignment conversation and stated the content of the email was a surprise to him. *Bernal Dep., 120:22- 121:21.*  Similarly, the detailed FAC only describes the April 8 reassignment conversation. (FAC, Para. 28).  Bernal's new, inconsistent, uncorroborated, self-

DEFENDANT'S REPLY IN SUPPORT
OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 9
Case No. 2:22-cv-00533-TL

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

1    serving statements do not overcome summary judgment.  *E.g., Nelson,* 83 F.3d 1075; *Villiarimo,*

2    281 F.3d 1054, 1061.

3        **G.      Plaintiff's Motion to Strike.**

4            Issues surrounding the scope of the permissible testimony of Mr. Hoffman, Mr. Svoboda,

5    and Mr. Hyslop should be addressed on a later date if Bernal's claims survive Summary Judgment.

6    (Plaintiff's Response at 13:18 – 16:3 (Mot. to Strike)).  Plaintiff's Counsel (i) noted Mr. Hoffman's

7    deposition and then struck it;[2] (ii) agreed to allow several more business days to serve a written

8    discovery supplemental pleading after thousands of pages of recently requested supplemental

9    discovery had been produced to Plaintiff within the discovery window;[3] and (iii) Mr. Svoboda's

10   references to Mr. Hyslop's direction are clearly permissible non-hearsay references to Svoboda's

11   then existing state of mind.[4] *Bannon Reply Decl., Exhibits A, B, C.*

12           Although Boeing will be prepared to argue that Plaintiff's Motion to Strike should be

13   denied, the evidence sought to be excluded is not necessary to rule on Boeing's Motion for

14   Summary Judgment, and Boeing urges the court to simply disregard such evidence *for purposes*

15   *of this motion only*, and instead, focus on Plaintiff's FAC and Plaintiff's deposition admissions,

16   and the other portions of Svoboda's declaration that are not in dispute.

17                            **II.      CONCLUSION.**

18           The three discrete acts by Svoboda are all time-barred: (i) August 2, 2018 decision refusing

19   to assign to (or removing from) the enforcement manager position, (ii) December 2018 decision

20

21   [2] In a December 2022 letter sent before the discovery cutoff deadline, Plaintiff's counsel was informed that all of the
22   witnesses listed in the Initial Disclosures (which included Mr. Hoffman) were incorporated as witnesses for Mr. Bernal
     and such clarification would be formalized in a subsequent supplemental discovery pleading. Plaintiff struck
     Hoffman's deposition on January 20, 2023.  *Bannon Reply Decl., Exhibits A, B.*

23
24   [3] In email exchange on Thursday January 26, 2023, Plaintiff's counsel agreed to allow Boeing's counsel until the
     following Wednesday to serve the supplemental discovery pleading that updated the thousands of documents of email
25   and other documents that had been provided over the previous month responsive to Plaintiff's December 2022
     supplemental requests; such allowed for the careful written detail to be provided for clarity and Plaintiff's benefit.
     *Bannon Reply Decl., Ex. C.*

26   [4] ER 803(3).

DEFENDANT'S REPLY IN SUPPORT
OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 10
Case No. 2:22-cv-00533-TL

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

1 to provide the performance evaluation rating, and (iii) April 8, 2019 final decision and

2 communication to demote from the GP&T manager position.

3     Bernal's retaliatory hostile work environment allegations based on Svoboda's untimely

4 conduct or communications fail because (i) discrete acts must fall within the limitations period,

5 and (ii) otherwise untimely acts by Svoboda did not consist of the same type of post-April 18, 2019

6 employment actions by Beltz, occur relatively frequently, and the alleged acts or communications

7 were not perpetrated by the same managers; they cannot form a single unlawful practice.

8     Bernal's post-April 18, 2019 hostile work allegations against Beltz were neither severe nor

9 pervasive. They are not legally actionable.

10     Summary Judgment should be granted in Boeing's favor as to all claims and causes of

11 action.

12     Respectfully submitted this 17th day of March, 2023, at Seattle, Washington.

13

14     I certify that this memorandum contains 3724 words, in compliance with the Local Civil Rules.

15

16     OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

17

18     By: */s/ Laurence A. Shapero* _____
    By: */s/ Brenda L. Bannon* _____

19     Laurence A. Shapero, WSBA No. 31301

20     Brenda L. Bannon, WSBA No. 17962
    1201 Third Avenue, Suite 5150

21     Seattle, WA  98101
    Telephone:   (206) 693-7057

22     Facsimile:    (206) 693-7058

23     Email:  laurence.shapero@ogletree.com
            brenda.bannon@ogletree.com

24     *Attorneys for Defendant*

25

26

DEFENDANT'S REPLY IN SUPPORT
OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 11
Case No. 2:22-cv-00533-TL

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058

1

## CERTIFICATE OF SERVICE

2     I hereby certify that on March 17, 2023, I served the foregoing **DEFENDANT THE**

3  **BOEING COMPANY'S REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR**

4  **SUMMARY JUDGMENT** via the method(s) below on the following parties:

5
          Margaret M. Boyle, WSBA #17089
6          BOYLE MARTIN THOENY, PLLC
          100 West Harrison Street, Suite S300
7          Seattle, WA 98119
          Tel: 206-217-9400
8          Fax: 206-217-9600
          Email:  margaret@bmtlitigation.com
9
          *Attorney for Plaintiffs*
10

11  ☒     by **electronic** means through the Court's Case Management/Electronic Case File system, which will send automatic notification of filing to each person listed above.

12
13  ☐     by **mailing** a true and correct copy to the last known address of each person listed above. It was contained in a sealed envelope, with postage paid, addressed as stated above, and deposited with the U.S. Postal Service in Seattle, Washington.
14

15  ☐     by **e-mailing** a true and correct copy to the last known email address of each person listed above.

16     SIGNED THIS 17th day of March, 2023 at Seattle, Washington.

17                              OGLETREE, DEAKINS, NASH, SMOAK &
18                              STEWART, P.C.

19                              By: */s/ Valencia H. Mayfield*
                                   Valencia H. Mayfield, Practice Assistant
20                                 valencia.mayfield@ogletree.com

21

22

23

24

25

26

DEFENDANT'S REPLY IN SUPPORT
OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 12
Case No. 2:22-cv-00533-TL

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1201 Third Avenue, Suite 5150 | Seattle, WA 98101
Phone: 206-693-7057 | Fax: 206-693-7058